IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

  vs.          No. CR19-4001-LTS

PATRICK JAMES SCHWARTE,    TRANSCRIPT OF
              INITIAL APPEARANCE,
    Defendant.     ARRAIGNMENT, and
_____/ PLEA TAKING


   The Hearing held before the Honorable Kelly K.E.
Mahoney, Chief Magistrate Judge of the United States
District Court for the Northern District of Iowa, at the
Federal Courthouse, 320 Sixth Street, Sioux City, Iowa,
January 23, 2019, commencing at 1:29 p.m.


APPEARANCES

For the Plaintiff:  TIMOTHY VAVRICEK, ESQ.
        Assistant United States Attorney
        111 Seventh Avenue Southeast
        Cedar Rapids, IA 52401

For the Defendant:  PATRICK T. PARRY, ESQ.
        Mayne, Hindman, Daane & Parry
        Suite 300 - Pioneer Bank Building
        701 Pierce Street
        Sioux City, IA  51101

Transcribed from  Shelly Semmler, RMR, CRR
digital recording by: 320 Sixth Street
        Sioux City, IA  51101
        (712) 233-3846

1          THE COURT:  Thank you.  Please be seated.

2   We're here in the matter of the United States versus

3   Patrick James Schwarte, Case Number 19CR4001.  The

4   government's represented by Tim Vavricek.  The defendant

5   appears personally and is represented by Patrick Parry.

6       First of all, Mr. Parry, how do you pronounce your

7   client's last name?

8          MR. PARRY:  Schwarte is the way I generally

9   pronounce it.

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  I wanted to make sure I had

12   that correct rather than mispronouncing it throughout the

13   hearing.

14       We are here for an initial appearance, an

15   arraignment, and, as I understand it then, a plea

16   proceeding.

17       So first of all, Mr. Schwarte, I want to make sure

18   you understand your rights.  You have the right to remain

19   silent.  That means you don't have to make any statements

20   to anybody.  If you give up that right, you need to

21   understand the government can use anything you say

22   against you.  Do you understand your right to remain

23   silent, sir?

24          THE DEFENDANT:  Yes.

25          THE COURT:  You also have the right to have a

1   lawyer in this case, and you're free to hire your own

2   lawyer.

3       It's my understanding Mr. Parry has been retained.

4   If for any reason you are unable to afford to pay for

5   your own lawyer, I would appoint one for you at public

6   expense.  Do you understand your right to a lawyer, sir?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Mr. Vavricek, any reason the

9   defendant would need to be advised of consular

10  notification rights?

11          MR. VAVRICEK:  None known, Your Honor.

12          THE COURT:  All right.  So, Mr. Schwarte, the

13  reason you are here is that the government has filed a

14  United States attorney's information against you.  That

15  information has been filed as document number 2 in this

16  case.  And it charges you with two separate crimes.

17      First, it charges Count 1 which is conspiracy to

18  defraud the United States.  And Count 2 charges you with

19  knowingly falsifying, tampering with, or rendering

20  inaccurate a monitoring device or method required to be

21  maintained in the Clean Water Act.  Have you received a

22  copy of this written information, sir?

23          THE DEFENDANT:  Yes.

24          THE COURT:  It has your name on the first page

25  as Patrick James Schwarte.  Do you see it there on the

first page of the information?

THE DEFENDANT:  Yes.

THE COURT:  Is that your true and correct name?
Is it spelled correctly on that information?

THE DEFENDANT:  Yes.

THE COURT:  This is a felony charge, or each of
these are felony charges.  That means you could require
the government to present these charges to a grand jury
to see if a grand jury would return an indictment.

It's my understanding, though, that you want to
waive and give up your right to have this case presented
to a grand jury and instead you would agree to go forward
just on the United States attorney's information.

So I guess, first of all, do you understand you do
have the right to require the government to present these
charges to a grand jury?

THE DEFENDANT:  Yes.

THE COURT:  And do you want to waive or give up
your right to make them do that, and you agree to proceed
just on the information?

THE DEFENDANT:  Yes.

THE COURT:  I find that the -- and actually I
guess, Mr. Parry, I have a waiver form, a waiver of
indictment form, here.  It's dated 12-31-18.  Is that
your client's signature and your signature as well on

1  that waiver form?

2          MR. PARRY:  It is, Your Honor.

3          THE COURT:  Based on this record, I find the

4  waiver of indictment is knowing, and it will be recorded

5  by the Court.

6      Mr. Schwarte, next I want to -- it's my

7  understanding you do want to plead guilty to these

8  charges.

9          THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  First, I'm a United States

11  magistrate judge.  This case is also assigned to a

12  district judge.  Now, that's a different type of judge,

13  and it's the type of judge that would decide what your

14  sentence should be if you do plead guilty.  So you have

15  the right to have a district judge or the sentencing

16  judge conduct a plea hearing.  But I can conduct the

17  hearing today if you agree to having me do so.

18          THE DEFENDANT:  Yes.

19          THE COURT:  You agree to having me conduct the

20  plea hearing, sir?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  And, Mr. Parry, again,

23  is this your signature and your client's signature that

24  appears on the consent form and is also dated 12-31-18?

25          MR. PARRY:  It is, Your Honor.

1           THE COURT:  So, Mr. Schwarte, what we're going

2    to do for the rest of the hearing is I need to, first of

3    all, make sure you're able to understand what's happening

4    here in court today.  I will go over your trial rights

5    that you would give up if you plead guilty.  We will talk

6    about the potential penalties you would face if you plead

7    guilty.  We'll go over the general terms of the written

8    plea agreement that I understand you may have entered

9    into with the government.  And I will discuss other

10   consequences that you will face if you do plead guilty.

11        So first I have to ask some questions to make sure

12   you're able to make an informed decision here today.  I

13   don't ask these questions to try to pry or embarrass you,

14   but I am required to ask them to make sure you can make

15   an informed decision.

16        You're required to answer these questions under

17   oath.  So could you please raise your right hand.

18             PATRICK SCHWARTE, DEFENDANT, SWORN

19           THE COURT:  You can put your hand down, sir.

20   You are under oath.  So, of course, you need to tell the

21   truth.  If you lie or fail to tell the truth while under

22   oath, you could be prosecuted for perjury or making a

23   false statement.  If convicted, you could be sentenced to

24   prison and ordered to pay a fine.  Do you understand

25   that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Also if you lie under oath, the

3    government could use what you say against you.  Do you

4    understand that as well?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Can you please tell me your full

7    name.

8          THE DEFENDANT:  Patrick James Schwarte.

9          THE COURT:  Mr. Schwarte, how old are you?

10         THE DEFENDANT:  Sixty-nine.

11         THE COURT:  How far did you go in school?

12         THE DEFENDANT:  12th grade, high school.

13         THE COURT:  Do you -- okay.  Do you have any

14   trouble reading or understanding English?

15         THE DEFENDANT:  No.

16         THE COURT:  Have you ever suffered from

17   depression, anxiety, or any other --

18         THE DEFENDANT:  Little bit of depression.

19         THE COURT:  Okay.  Are you currently, do you

20   feel like, suffering from symptoms of depression or being

21   treated for that?

22         THE DEFENDANT:  I don't -- I didn't -- no, I'm

23   not being treated for it right now.

24         THE COURT:  Okay.  Do you feel like you're

25   currently suffering from any depression symptoms?

1          THE DEFENDANT:  Well, I think a little bit,

2    yeah.  This is, you know, mentally taxing.

3          THE COURT:  I think that's completely

4    understandable.  Do you feel that any feelings of

5    depression right now are affecting the way you think, or

6    do you think you're thinking clearly?

7          THE DEFENDANT:  I don't know.

8          THE COURT:  All right.

9          THE DEFENDANT:  Yeah.

10         MR. PARRY:  He's indicating, Your Honor, he's

11   thinking clearly for purposes of the court proceeding.

12         THE COURT:  Sure.  I sometimes ask some bad

13   questions.  So you did the absolute right thing to say

14   you weren't sure.  And if you don't understand something

15   I'm saying too, it's perfectly okay to tell me that;

16   okay?

17         THE DEFENDANT:  Yes.

18         THE COURT:  All right.  Have you ever suffered

19   from any other mental health condition such as anxiety or

20   anything else?

21         THE DEFENDANT:  No.

22         THE COURT:  Are you currently taking any

23   prescription or over-the-counter medications?

24         THE DEFENDANT:  I do prescriptions for my

25   health.

1        THE COURT:  Okay.  And I guess I should

2   indicate too, prior to this proceeding I did review the

3   sealed pretrial services report prepared by the U.S.

4   Probation Office.  That was filed as document number 6 in

5   this case.  Did you get a chance to review that,

6   Mr. Parry?

7        MR. PARRY:  I reviewed it.  I didn't get a

8   chance to review it all the way with my client, although

9   we got almost all the way through it, so it --

10       THE COURT:  Okay.

11       MR. PARRY:  For all practical purposes, I think

12   we've reviewed it enough.

13       THE COURT:  All right.  Mr. Vavricek, did you

14   have a chance to review that report as well?

15       MR. VAVRICEK:  I did.  Thank you.

16       THE COURT:  So, Mr. Schwarte, it does discuss

17   some of your physical health issues that you have.

18   That's at the bottom of page 2 of that pretrial services

19   report.  Are those the health issues, the physical

20   issues, that you're taking medication for?

21       THE DEFENDANT:  Yes, yes.

22       THE COURT:  Anything about any of those health

23   conditions or the medicine that you're taking for them

24   that makes it hard for you to think clearly?

25       THE DEFENDANT:  No.

1          THE COURT:  Okay.

2          THE DEFENDANT:  I always have trouble thinking

3     clearly so -- sorry.

4          THE COURT:  But those don't make it hard for

5     you to understand what's happening here in court today.

6          THE DEFENDANT:  No.

7          THE COURT:  Have you ever abused alcohol or

8     drugs, sir?

9          THE DEFENDANT:  I drink beer.

10          THE COURT:  Okay.

11          THE DEFENDANT:  But I -- I have -- I don't

12     abuse it.  I've never been picked up for it.

13          THE COURT:  Okay.  In the last 24 hours, have

14     you used any alcohol or drugs or medication?

15          THE DEFENDANT:  I had two beers yesterday.

16          THE COURT:  Yesterday.  Was that before -- I'm

17     assuming before you went to bed last night?

18          THE DEFENDANT:  Yeah.  In the after -- late in

19     the afternoon.

20          THE COURT:  Okay.  It's about 1:40 in the

21     afternoon now.  Do you feel like you're under the

22     influence of alcohol in any way?

23          THE DEFENDANT:  No.

24          THE COURT:  Anything about drinking beers or

25     use of alcohol that you think makes it hard for you to

1  think clearly here today?

2  THE DEFENDANT:  No.

3  THE COURT:  All right.  Is there any reason you

4  can think of, either anything we've already talked about

5  or something else, that would make it hard for you to

6  understand what's happening here in court today?

7  THE DEFENDANT:  No.

8  THE COURT:  I understand I'm sure this is a

9  stressful situation.

10  THE DEFENDANT:  Confusion.

11  THE COURT:  I mean, you've already indicated

12  that.  So I just want to make sure that you understand

13  everything that happens during the hearing because you're

14  making an important decision about whether or not to

15  plead guilty.  If at any time you can't hear something

16  that's being said or if you don't understand what's being

17  said, would you please let me know that?

18  THE DEFENDANT:  Yes.

19  THE COURT:  It's okay to interrupt even if I'm

20  the one talking if you can't hear or you don't understand

21  what's being said; okay?

22  THE DEFENDANT:  Yes.

23  THE COURT:  I think, as I've already told you

24  and probably demonstrated, I'm capable of asking bad

25  questions.  So if you don't understand something I'm

1  asking or something we've talked about, would you just

2  please tell me that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Mr. Parry, do you have

5  any reason to believe your client would not be competent

6  to enter a plea in this case?

7          MR. PARRY:  No, Your Honor.

8          THE COURT:  Mr. Schwarte, next I want to talk

9  about your trial rights because you would give up each of

10 these rights if you plead guilty.

11     First, you have an absolute right to plead not

12 guilty.  Means you don't have to plead guilty here today

13 unless you choose to do so.  Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  You also have the right to a lawyer

16 as I've talked about.  Now, Mr. Parry will represent you

17 whether you plead guilty or go to trial.  And again, if

18 he couldn't continue to represent you or if you couldn't

19 afford to pay for a lawyer, I would appoint one for you

20 at public expense because you do have that right to a

21 lawyer.  Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Sir, you also have a right to a

24 speedy and public jury trial.  Now, if you went to trial,

25 you and your lawyer would get to help pick which people

served as your jurors.  The jury would be made up of 12
people, and they'd come from communities across northwest
Iowa.

The jurors who were selected to serve in your case
or at trial, they would each have to promise under oath
to try your case fairly based only on the evidence
admitted at trial and the instructions about the law that
the trial judge would give them.

The jury could only return a verdict against you if
it was unanimous.  That means all 12 jurors agreed what
the verdict should be.  Do you understand your right to a
jury trial?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Schwarte, you are presumed
innocent of these charges against you.  That presumption
of innocence remains with you unless at the end of trial
all 12 jurors agreed the government had proved your guilt
beyond a reasonable doubt.

Now, if you did go to trial, the judge would tell
the jury about your presumption of innocence and that
you're presumed innocent and that the presumption of
innocence alone would be enough for them to find you not
guilty.  Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  You also have a right to

1    confrontation.  This means the government would have to

2    call its witnesses against you during trial.  They would

3    testify under oath, and you would be able to see and hear

4    them testify.

5         Now, your lawyer would not have to question the

6    witnesses at trial, but he could confront them by

7    cross-examining the witnesses.  That means your lawyer

8    would have a chance to ask them questions while they're

9    under oath.

10        Do you understand if you plead guilty you will give

11   up your right to confront the witnesses against you?

12            THE DEFENDANT:  Yes.

13            THE COURT:  You also have the right to present

14   a defense.  Now, as I said, you're presumed innocent of

15   these charges.  And in a criminal case you would not have

16   to prove anything.  You don't have to prove that you're

17   not guilty or that you're innocent.  That's because in

18   criminal cases in this country it is the government's

19   burden to prove a person's guilt beyond a reasonable

20   doubt if they can do so.

21        So you wouldn't have to offer any evidence if you

22   went to trial, but you could if you chose to do so.  You

23   could offer relevant exhibits, and you could call

24   witnesses to testify on your behalf.  Subpoenas could be

25   issued to require your witnesses to appear.  And if you

1  couldn't afford the costs to serve the subpoenas or have

2  your witnesses come to court, I would order the

3  government pay those costs.  Do you understand if you

4  plead guilty you will give up your right to present a

5  defense to these charges?

6          THE DEFENDANT:  Yes.

7          THE COURT:  You also have the right to remain

8  silent.  That means you could testify at trial if you

9  wanted to do so, but you wouldn't have to.

10      If you went to trial and you decided not to testify,

11  the government's lawyer couldn't say anything about that

12  to the jury.  And, in fact, the trial judge would tell

13  the jury you have a constitutional right to remain silent

14  and that they couldn't consider or even discuss in any

15  way the fact that you chose not to testify.  Do you

16  understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Mr. Schwarte, if the jury at trial

19  returned a guilty verdict against you, you'd have the

20  right to appeal that conviction and have a lawyer help

21  you with that appeal.  Do you understand that as well?

22          THE DEFENDANT:  Yes.

23          THE COURT:  In summary, if you do plead guilty

24  here today, you would be judged guilty based upon your

25  plea just the same as if a jury returned a guilty verdict

1    against you.  There would be no trial, and, in fact, the

2    only other hearing that there would ha -- you would have

3    would be a sentencing.  Do you understand if you plead

4    guilty you would give up your right to a trial and each

5    of the rights I just described?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Next I want to make sure you

8    understand the penalties you would face if you plead

9    guilty.  It's my understanding the parties have entered

10   into a plea agreement.  I have a copy of a second revised

11   memorandum dated December 21, 2018, and it's marked as

12   Government Exhibit 1.

13        Mr. Vavricek, are you offering that during this

14   hearing?

15             MR. VAVRICEK:  Yes, Your Honor, under seal,

16   please.

17                          *   *   *   *

18             (Government Exhibit 1 was offered.)

19                          *   *   *   *

20             THE COURT:  Mr. Parry, any objection?

21             MR. PARRY:  No objection.

22             THE COURT:  Government Exhibit 1 is received,

23   and it will be filed under seal.

24                          *   *   *   *

25             (Government Exhibit 1 was admitted.)

1                              *   *   *   *

2              THE COURT:  Mr. Parry, do you have a copy of

3     the plea agreement at counsel table with you?

4              MR. PARRY:  I do, Your Honor.

5              THE COURT:  And is it before Mr. Schwarte?

6              MR. PARRY:  It is, Your Honor.

7              THE COURT:  So, Mr. Schwarte, I'm going to go

8     through the penalties you would face if you plead guilty.

9     These are listed in paragraphs 2 and 3 of the plea

10    agreement.  If you want to refer to that, you're more

11    than welcome to do so.

12         But for Count 1, the conspiracy charge, if you plead

13    guilty, you could be sentenced to a term of imprisonment

14    of not more than 5 years in prison.  The judge would also

15    impose a fine, and the maximum fine is $250,000.  After

16    serving any prison sentence, the judge could order you

17    serve a term of supervised release of not more than three

18    years.

19         For Count 2, the Clean Water Act violation, the

20    judge could sentence you to prison for not more than 2

21    years.  The judge could also impose a fine, and the

22    maximum fine is $10,000.  And the term of supervised

23    release could be up to or not more than one year of

24    supervised release.

25         Now, in addition, the judge would have to order that

1    you pay a $100 special assessment for each count of

2    conviction.  So if you plead guilty today to both of

3    these charges, that would be a total of $200 of special

4    assessments that the judge does have to order you pay.

5    The judge would also have the power to order restitution

6    and could order forfeiture of property if that was

7    applicable which it doesn't appear to be in this case.

8         But just so you know, those are the potential parts

9    of a sentence the judge could impose if you do plead

10   guilty.  Do you understand the maximum penalties that

11   could be imposed, sir?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Now, at this point nobody knows for

14   sure what your sentence would be if you plead guilty, not

15   even the sentencing judge.  If you do plead guilty, I'll

16   order a presentence investigation.  That's conducted by

17   the probation office.  And they conduct a thorough

18   investigation of this case, and they will prepare what's

19   called a presentence investigation report.  It will have

20   information about these offenses as well as about you and

21   your background.

22        Now, each of the lawyers receives a copy of the

23   draft report.  You should review the draft presentence

24   report carefully with your lawyer.  Let him know if

25   there's anything that's not correct in the report or if

there were things that were left out of the report because the lawyers have the right to object or ask that changes be made to the presentence report.

Probation will make any necessary changes to make sure that presentence report's complete and accurate. And after it's finalized, it will be given to the sentencing judge, and you'll have a sentencing hearing.

Now, at sentencing the judge will have reviewed the final presentence investigation report. The judge will also calculate how the United States Sentencing Guidelines apply in your case. Have you heard the term sentencing guidelines before today?

THE DEFENDANT: Yes.

THE COURT: And it looks like is that something that -- your lawyer has a book out that contains the sentencing guidelines. Is it something you've talked about with your lawyer before the hearing today?

THE DEFENDANT: Yes.

THE COURT: So I'm sure he has explained this, but I want to make sure you understand the judge at sentencing will calculate how those guidelines apply in your case. That results in what's called an advisory guideline range, and that's just a range of months within which the sentencing commission who created the guidelines recommends the judge sentence you to prison

1    for.

2        Now, the judge has to consider the advisory

3    guideline range in deciding what your sentence should be.

4    But the judge isn't bound by it.  The judge could depart

5    or vary from the sentencing guidelines or the advisory

6    guideline range based upon factors provided for in the

7    sentencing guidelines or sentencing statutes.  The judge

8    just has to consider the advisory guideline range in

9    deciding your sentence, and the judge has to give you a

10    reasonable sentence.  So it's possible the sentence you

11    receive might be either lower than or higher than the

12    advisory guideline range.  In fact, it could be all the

13    way up to the maximum which is, again, for Count 1, 5

14    years in prison and Count 2, 2 years in prison.  Do you

15    understand all of that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  We'll talk about the plea agreement

18    in a moment.  And it has some stipulations about how the

19    guidelines might apply in your case.  But -- and I'm sure

20    probably your lawyer it sounds like and you have talked

21    about the sentencing guidelines and perhaps what type of

22    sentence you might receive.

23        You need to understand that any discussion about the

24    sentencing guidelines or possible sentence are based upon

25    your lawyer's or the lawyers' best estimate based upon

their experience of what your sentence might be or how
the guidelines might apply, but they aren't promises or
guarantees. If the judge ends up calculating the
sentencing guidelines different than how you thought the
judge might do or if the judge gives you a sentence
that's different than what you thought it might be, you
cannot withdraw a guilty plea because of that. Do you
understand that?

THE DEFENDANT: Yes.

THE COURT: You need to understand that if you
do receive a prison sentence you'll have to serve all of
that sentence in some form of custody.

Now, if you receive a sentence of more than one year
in prison, you could receive a small reduction in the
prison sentence for good-time credit you might earn. But
again, that's only if you receive a sentence of over one
year in prison. You need to understand if you do receive
a prison sentence, you'll never see a parole board,
though, because there is no parole in the federal system.
Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Mr. Schwarte, each of these charges
would be a felony conviction if you plead guilty. That
means that you will also lose certain rights if you plead
guilty. First, you'll lose the right to vote, the right

1  to hold public office, and the right to serve on a jury.

2  In addition, you would be prohibited from possessing

3  firearms or ammunition.  Do you understand the rights

4  you'll lose if you plead guilty?

5          THE DEFENDANT:  Yes.

6          THE COURT:  I talked about that as part of your

7  sentence the judge could order you serve a term of

8  supervised release.  That's just a time period during

9  which your conduct is monitored by the U.S. Probation

10  Office.  There are mandatory conditions of supervised

11  release.  You can't commit any federal, state, or local

12  crime, and you cannot possess any illegal controlled

13  substances, any firearms, or ammunition.

14     In addition, the judge could order you follow

15  additional special conditions of release.

16     You just need to understand that you have to follow

17  all of the conditions of supervised release if supervised

18  release is imposed because if you violate any of those

19  conditions, the judge could revoke your supervision and

20  order that you serve in prison all or part of the time

21  you otherwise would have been on supervised release.  Do

22  you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Next I'd like to talk to you about

25  the terms of the plea agreement you've reached with the

1   government.  And again, it looks like you have a copy of

2   that in front of you.

3       In paragraph 1 you are agreeing to waive an

4   indictment and plead guilty to both Counts 1 and 2 of the

5   United States attorney's information.  So that's the

6   conspiracy charge and the Clean Water Act violation that

7   we've talked about in Counts 1 and 2 of the information.

8       In return, the government agrees -- and this is in

9   paragraph 5 -- that it will move for the dismissal of any

10  remaining counts which I guess, Mr. Vavricek, it doesn't

11  appear there are any additional counts at this point.

12  Are there?

13          MR. VAVRICEK:  No, Your Honor.

14          THE COURT:  All right.  In addition, as

15  provided for in paragraph 5, the government agrees it

16  won't prosecute you further as provided for in that

17  paragraph.  Do you understand those general terms of the

18  plea agreement, sir?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Next I want to talk to you about

21  the sentencing guideline stipulations you've reached with

22  the government in the plea agreement.  And just one

23  moment.  I guess let me ask you too, did you have a

24  chance to fully read and review this plea agreement with

25  your lawyer?

1      THE DEFENDANT:  Yes.

2      THE COURT:  There are initials before each of

3  the numbered and lettered paragraphs of this plea

4  agreement as well as a signature above your name on the

5  signature page of the plea agreement.  Are those your

6  initials and your signature, sir?

7      THE DEFENDANT:  Yes.

8      THE COURT:  Did you sign and file -- excuse me.

9  Did you sign and initial the plea agreement only after

10  you've had a chance to fully review it with your lawyer?

11      THE DEFENDANT:  Yes.

12      THE COURT:  I do want to talk to you about the

13  sentencing provisions.  Again, this is the type of plea

14  agreement where there are no guarantees or promises about

15  what your sentence will be.  It does have some

16  recommendations or stipulations about how the sentencing

17  guidelines should apply in this case.  So specifically

18  you and the government are agreeing to recommend to the

19  sentencing judge that when the judge calculates the

20  guidelines that these parts of the guidelines apply.

21      First, for Count 1 of the conspiracy, that there be

22  a base offense level or a starting point under the

23  guidelines of 6.  That's based upon the offense -- the

24  offense involved and because you were a public official

25  at the time.

1    For Count 2, the tampering or Clean Water Act

2  offense, you also agree the base offense level or

3  starting point would be 6, that there should be a 6-level

4  increase because --

5         MR. PARRY:  Your Honor, the -- on Count 1, I

6  think the base offense level's 14.

7         THE COURT:  You're correct.  You are correct.

8         MR. PARRY:  Okay.

9         THE COURT:  So for Count 1 -- and this is in

10  paragraph 17A on page 15 of the plea agreement.  Thank

11  you for correcting me there, Mr. Parry.  So you're

12  agreeing the base offense level would be 14 for Count 1,

13  the conspiracy charge.  Base offense level of 6 would be

14  for Count 2, the tampering or Clean Water Act charge.  Do

15  you understand that, sir?

16         THE DEFENDANT:  Yes.

17         THE COURT:  All right.  For Count 2 you're

18  agreeing to recommend that there be a 6-level increase

19  because the offense involved repetitive discharge,

20  release, or emission of a pollutant into the environment

21  and also that there be a 4-level increase because the

22  offense involved discharge in violation of a permit.

23    For both counts you and the government are agreeing

24  that those should be grouped under the sentencing

25  guidelines, and that's just a way in which the court

1  would figure out how the guidelines ultimately apply

2  since there's two counts involved.

3      The government agrees -- and this is in paragraph --

4  subparagraph E -- that it will let the court know you

5  were timely in notifying the government of your intention

6  to plead guilty.  That would let the court reduce the

7  guideline calculation by either two or three levels for

8  acceptance of responsibility.

9      There are no agreements about your criminal history

10  and how that might apply.  But you and the government are

11  agreeing that there should be a two-level increase for

12  this offense because it involved the abuse of a position

13  of public trust and the use of a special skill in a

14  manner that significantly facilitated the commission of

15  the offense.

16          MR. PARRY:  Your Honor, actually those -- those

17  particular enhancements are contested.  I think that's

18  what the plea agreement sets out.

19          THE COURT:  You are correct, and it very

20  specifically says contested enhancements.

21      So you're not agreeing to these, but you need to

22  understand the government might argue that these apply,

23  and it's possible the judge could find that these

24  enhancements apply.

25      So it'd be a two-level increase for abuse of

position of trust or use of special skill, whether or not
you had a role in the offense, and specifically whether
you had a supervisory role or an organizational role such
that the judge should depart upward, and it could depart
upward up to 4 levels for your role in the offense if the
government were to establish that and the court made the
necessary findings.

Otherwise, both you and the government are free to
provide any evidence or argument about how the guidelines
might apply in your case.

So do you understand what guidelines you are
agreeing to recommend to the sentencing judge and then
also the additional guidelines that might apply in your
case that you're not agreeing to but the government's
free to argue for?

MR. PARRY:  I'm sorry, Your Honor.  Just
looking at the plea agreement myself making sure it was
worded correctly.

THE COURT:  No.  That's fine.  I just asked a
really longwinded question again.

So I guess, Mr. Schwarte, do you understand the base
offense levels that you're agreeing to as well as the
discharge enhancements you're agreeing to for Count 2
that we talked about in paragraphs 17A through 17D of the
plea agreement?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And you understand these are just

3    recommendations.  The sentencing judge doesn't have to

4    follow or calculate your guidelines based upon those

5    recommendations.  Judge might calculate the guidelines

6    differently.  Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  If that happens, you can't withdraw

9    your guilty plea because of that.  Do you understand

10   that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Okay.  The plea agreement talks

13   about -- this is in paragraph 20 -- that this offense is

14   covered by the Victim and Witness Protection Act.  That

15   means the government has certain obligations that it has

16   to meet under that act.

17      Mr. Vavricek, are there any victims present in the

18   courtroom who wish to be heard regarding the plea in this

19   matter?

20         MR. VAVRICEK:  No, Your Honor.

21         THE COURT:  All right.  Mr. Schwarte, over on

22   page 20 of the plea agreement it talks about financial

23   matters.  It again talks about the fact that you do have

24   to pay a special assessment of $100 per count so for $200

25   total if you plead guilty and that that would need to be

1  paid prior to sentencing in this case.  If you don't pay

2  the $200 special assessment prior to sentencing, then the

3  court would be free to not reduce your sentence for

4  acceptance of responsibility or reduce your guideline

5  calculation for accepting responsibility.  Do you

6  understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Also you're agreeing to prepare a

9  financial statement and submit to a debtor's examination

10  if you do plead guilty.  Do you understand that as well?

11          THE DEFENDANT:  Yes.

12          THE COURT:  As part of that too, you agree that

13  you'll truthfully -- be truthful in information you

14  provide and account for all assets, income, and other

15  holdings that you might have.  Do you understand that

16  you've agreed to that?

17          THE DEFENDANT:  On the best -- to the best of

18  my knowledge, yes.

19          THE COURT:  Okay.  Mr. Vavricek, do you

20  anticipate restitution might be part of the sentence in

21  this case?

22          MR. VAVRICEK:  It is not anticipated, Your

23  Honor.

24          THE COURT:  Okay.

25          MR. VAVRICEK:  It's always a possibility, but

1   it's not anticipated here.

2           THE COURT:  So, Mr. Schwarte, as I already told

3   you, the court does have the authority to impose

4   restitution if that applies in this case.  It sounds like

5   at this point that's not anticipated.  But you do need to

6   understand that it's possible that by the time of

7   sentencing if things change and it looks like restitution

8   would be appropriate the court does have the authority to

9   order restitution.  Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  The last provision of the par -- or

12  plea agreement aside from the facts that I want to talk

13  to you about is the waiver of appeal that's over on page

14  36.

15      Now, in this paragraph of the plea agreement, you're

16  waiving or giving up almost all of your rights to appeal

17  your conviction and whatever sentence you receive in this

18  case.  In addition, you're waiving or giving up almost

19  all of your rights to seek what they call postconviction

20  relief action.  Did you review that paragraph carefully

21  with your lawyer?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand the rights you're

24  giving up in that paragraph of the plea agreement?

25          THE DEFENDANT:  To a certain amount, yes.  I'm

1   not sure, though.

2           THE COURT:  All right.  Do you want to talk to

3   your lawyer about that before we proceed any further?

4           THE DEFENDANT:  Yeah, because I -- okay.

5           THE COURT:  I'll give you a moment to talk to

6   him.  Take the time you need.

7       Let me know when you're finished, Mr. Parry.

8           MR. PARRY:  Your Honor, we've had a chance to

9   review it, and I think the defendant understands the

10  nature of that section.  We've reviewed it a couple times

11  before, but this is, as the Court's aware, kind of a

12  lengthy plea agreement based on the -- I think the nature

13  of the charges is a big part of it and the -- between

14  that and the information, it takes a long time to get

15  through fairly intensive legal documents.

16          THE COURT:  Sure.  And, Mr. Schwarte, I think

17  that, quite frankly, a lot of the provisions in a plea

18  agreement or in a criminal case can sometimes be

19  confusing even to lawyers.  So I don't think it's unusual

20  that it's a lot to process.  Do you think you've had

21  enough time to talk to Mr. Parry about the plea agreement

22  and in particular the waiver of appeal in this plea

23  agreement?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And you think you understand the

1  appeal rights you're giving up in that paragraph of the

2  plea agreement?

3  　　　　　THE DEFENDANT:  Yes.

4  　　　　　THE COURT:  All right.  Sir, next I want to go

5  over the elements for the charges against you.  Elements

6  are the things that make up the crime.  And if you were

7  to go to trial, the government would have to prove each

8  element of a charge against you beyond a reasonable doubt

9  before a jury could convict you.

10  　　　So for Count 1, the conspiracy charge, there are

11  four elements.  First, the government would have to prove

12  that on or about the dates charged here in the Northern

13  District of Iowa two or more people reached an agreement

14  to defraud the United States.  And specifically it's

15  alleged that the conspiracy sought to impede, impair,

16  obstruct, or defeat a lawful governmental function by the

17  Environmental Protection Agency and specifically by

18  knowingly falsifying, tampering with, and rendering

19  inaccurate the monitoring device or method that's

20  required under the Clean Water Act.

21  　　　The second element is that you voluntarily and

22  intentionally joined in the agreement either when it was

23  first reached or at some time while it was still in

24  effect; third, that when you joined the agreement, you

25  knew the purpose of the agreement; and, fourth, that

while the agreement was in effect, either you or another

person or persons who were part of that agreement

knowingly did one or more act for the purpose of carrying

out or moving forward the agreement.  Do you understand

those four elements for Count 1, sir?

THE DEFENDANT:  Yes.

THE COURT:  For Count 2, the tampering or Clean

Water Act charge, there are three separate elements.  The

first is on or about the dates charged in the

information -- and I believe I said indictment earlier.

Any time I've said indictment, I actually mean

information, of course, because we have an information in

this case.

But for -- the first element would be on or about

the dates charged here in the Northern District of Iowa

you falsified, tampered with, or rendered inaccurate a

monitoring device or method; you did that by employing

fraudulent testing procedure and that it was in violation

of required permits.  Do you understand -- and then

actually the second element would be that the monitoring

device or method was required to be maintained under the

Clean Water Act; and, third, that you acted knowingly

when you did this.  That means that you acted voluntarily

and intentionally and it wasn't a result of a mistake or

ignorance or accident.  Do you understand those three

1  elements, sir?

2          THE DEFENDANT:  Yes.

3          THE COURT:  There is a stipulation of facts in

4  the plea agreement.  Just one moment.  The stipulation of

5  facts starts on page 6.  It's at paragraph 14A.  And it

6  runs through paragraph 14LL on page 14.  Did you read

7  each of those paragraphs carefully?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Just one moment.  Were there any

10  handwritten changes to the factual stipulations,

11  Mr. Parry?

12          MR. PARRY:  I don't believe there are in this

13  draft of it.  We went through a couple different drafts

14  before we got to it.

15          THE COURT:  Okay.

16          MR. PARRY:  I think this is -- there's no

17  changes at all.

18          THE COURT:  All right.  I did not think I saw

19  any, but I wanted to make sure.

20      Mr. Schwarte, are all of the facts contained in

21  those paragraphs of the factual stipulation true and

22  correct?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And again, are those your

25  handwritten initials beside each of those numbered and

1  lettered paragraphs?

2  THE DEFENDANT:  Yes.

3  THE COURT:  I'm not going to go through these

4  in detail, but I do want to establish some of the facts

5  here on the record.

6  Is it true during the relevant time period in this

7  case you served as a shift supervisor for the Sioux City

8  Wastewater Treatment Plant?

9  THE DEFENDANT:  Yes.

10  THE COURT:  And do you acknowledge that that

11  would be considered a position or that you served as a

12  public official in that position?  It would have been

13  a -- or that you served as a public official in that

14  position?

15  THE DEFENDANT:  Yes.

16  THE COURT:  Do you acknowledge that the

17  wastewater treatment plant was regulated by or under the

18  Clean Water Act and that there was specifically a 2006

19  NPDES permit as well as a 2015 ND -- or NPDES permit that

20  were in place?

21  THE DEFENDANT:  Yes.

22  THE COURT:  Did those permits require sampling

23  and testing of wastewater discharge?

24  THE DEFENDANT:  Yes.

25  THE COURT:  Is it true that you reached an

 1   agreement with at least one other person to defraud the

 2   United States by impeding, impairing, obstructing, or

 3   defeating the EPA's lawful governmental functions in

 4   essentially requiring testing and sampling under those

 5   permits?

 6           THE DEFENDANT:  Yes.

 7           THE COURT:  And was this done by knowingly

 8   falsifying, tampering with, and rendering inaccurate a

 9   monitoring device or method that were required under the

10   Clean Water Act?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Was part of this agreement --

13           THE DEFENDANT:  Excuse me.

14           THE COURT:  Yes.  And if you need a moment too,

15   let me know.  Was part of the agreement to defraud the

16   United States such that you and/or other employees of the

17   wastewater treatment plant tampered with the testing and

18   sampling method at the wastewater treatment plant?

19           THE DEFENDANT:  Yes.

20           THE COURT:  And was it done essentially in a

21   way that it concealed or showed inaccurate -- what would

22   have been inaccurate readings for the --

23           THE DEFENDANT:  Yes.

24           THE COURT:  -- E. coli or the fecal coliform

25   levels in the wastewater that was being discharged?

1            THE DEFENDANT:  Yes.

2            THE COURT:  Was it also done in a way that it

3    would not give accurate readings for the total residual

4    chlorine in those samples as well?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And you acknowledge that the

7    testing method that was -- or monitoring device or method

8    that was used that was required under the Clean Water

9    Act?

10           THE DEFENDANT:  Say that again, ma'am.

11           THE COURT:  You -- that was a bad question

12   again.  So the sampling or testing or monitoring method

13   that was tampered with, that method of testing or

14   sampling, that was required under the Clean Water Act?

15           THE DEFENDANT:  Yes.

16           THE COURT:  So this agreement to tamper with

17   this testing method and such, did you voluntarily and

18   intentionally join into it?

19           THE DEFENDANT:  Yes.

20           MR. PARRY:  Your Honor, in particular -- and

21   maybe it's not very clear.  I know we've got a lot of

22   facts laid out in the plea agreement.  But this practice

23   had been going on I think for quite a long time even

24   before Mr. Schwarte became the shift supervisor.  But he

25   joined into this later on while it was still in effect.

1          THE COURT: Okay. So you may not have been

2     there at the very beginning of the agreement, but you

3     acknowledge you did join into it while it was still in

4     effect?

5          THE DEFENDANT: Yes.

6          THE COURT: And did you do that voluntarily?

7     That means nobody forced you or pressured you into it?

8          THE DEFENDANT: Yes.

9          THE COURT: And did you know the purpose of the

10    agreement when you joined it?

11         THE DEFENDANT: Yes.

12         THE COURT: More specifically, do you

13    acknowledge that this occurred -- just one moment.

14    That -- do you acknowledge that there were, in fact,

15    overt acts or there were steps taken by members of this

16    conspiracy to further the conspiracy?

17         THE DEFENDANT: Yes.

18         THE COURT: And would that include that

19    around -- from 2012 until June of 2015 persons knowingly

20    and intentionally impeding, impairing, obstructing, and

21    defeating the lawful governmental functions of the EPA by

22    using the -- tampering with the testing method? Is that

23    accurate, or is that how it happened?

24         THE DEFENDANT: Yes.

25         THE COURT: And would that have included steps

1     that on May 15 of 2015 there was a report submitted to

2     the Iowa Department of Natural Resources that included

3     false sample readings or testing results?

4               THE DEFENDANT:  Yes.

5               THE COURT:  Is it also true that around 2012

6     and continuing to June of 2015 as part of this conspiracy

7     there was wastewater discharged into the Missouri River?

8               THE DEFENDANT:  Yes.

9               THE COURT:  And as also part of this conspiracy

10    from 2013 until 2015 was there application made and the

11    receipt of funds for an asset renewal project?

12              THE DEFENDANT:  Yes.

13              THE COURT:  And also in December of 2012 there

14    was a construction permit received, was part of this

15    conspiracy?

16              THE DEFENDANT:  Yes.

17              THE COURT:  With regard to the tampering charge

18    or the Clean Water Act offense, is it true that from 2012

19    until June of 2015 that you knowingly falsified, tampered

20    with, and rendered inaccurate the monitoring device or

21    method required to be maintained under the Clean Water

22    Act?

23              THE DEFENDANT:  Yes.

24              THE COURT:  And did you do this knowingly?

25              THE DEFENDANT:  Yes.

THE COURT:  Do you acknowledge that all of
these events and activities occurred at least in part
here in the Northern District of Iowa?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Vavricek, I did not, again, go
through in detail the factual stipulations in the plea
agreement.  Are there additional factual stipulations or
factual basis you would like to establish or cover?

MR. VAVRICEK:  No, Your Honor.  I believe you
covered it.  Thank you.

THE COURT:  Is there anything else you would
like to cover in terms of the plea agreement?

MR. VAVRICEK:  No, Your Honor.  Thank you.

THE COURT:  Mr. Parry, anything regarding the
factual stipulation or basis or the plea agreement?

MR. PARRY:  No, Your Honor.

THE COURT:  Mr. Vavricek, did I correctly state
the elements for the charges in this case?

MR. VAVRICEK:  Yes, Your Honor.

THE COURT:  Do you believe that on this record
between the record made here today as well as the factual
stipulation in the plea agreement there's a factual basis
for the pleas?

MR. VAVRICEK:  Yes, Your Honor.

THE COURT:  Mr. Parry, do you believe your

1  client understands the elements?

2      MR. PARRY:  I do, Your Honor.

3      THE COURT:  Do you think there's an adequate

4  factual basis on this record?

5      MR. PARRY:  I do, Your Honor.

6      THE COURT:  Did you have access to the

7  government's discovery material?

8      MR. PARRY:  I had access to -- this is a

9  preindictment case, so basically I had access to selected

10 portions of it.  The portions I reviewed support the plea

11 agreement and the stipulations provided in it.

12     THE COURT:  Okay.  And did you have a chance to

13 consider any defenses that might apply to these charges

14 and discuss those with your client?

15     MR. PARRY:  Yes, Your Honor.

16     THE COURT:  Mr. Schwarte -- or I guess also are

17 there any additional collateral consequences we should

18 discuss, Mr. Vavricek?

19     MR. VAVRICEK:  No, Your Honor.

20     THE COURT:  So, Mr. Schwarte, if you do plead

21 guilty here today and the district judge accepts your

22 plea, you will not be able to withdraw the guilty plea.

23 Do you understand that?

24     THE DEFENDANT:  Yes.

25     THE COURT:  Has anybody forced or pressured you

1  to plead guilty here today?

2          THE DEFENDANT:  No.

3          THE COURT:  Has anybody promised you anything

4  to get you to plead guilty?

5          THE DEFENDANT:  No.

6          THE COURT:  Has anybody promised you for

7  certain what your sentence would be if you plead guilty?

8          THE DEFENDANT:  No.

9          THE COURT:  Has anybody threatened you or your

10  loved ones to get you to plead guilty?

11         THE DEFENDANT:  No.

12         THE COURT:  Mr. Parry, do you believe a plea in

13  this case would be voluntary?

14         MR. PARRY:  I do, Your Honor.

15         THE COURT:  Is there any legal reason a plea

16  should not be accepted?

17         MR. PARRY:  No, Your Honor.

18         THE COURT:  Is there anything I have said or

19  omitted that might affect the validity of a plea?

20         MR. PARRY:  No, Your Honor.

21         THE COURT:  And, Mr. Vavricek, is there

22  anything you can think of I have said or omitted that

23  might affect the validity of the plea?

24         MR. VAVRICEK:  No, Your Honor.

25         THE COURT:  Mr. Schwarte, I know we've covered

1   a lot of information here, especially in a short amount

2   of time.  And I know it's -- some of it's complicated

3   information.  Have you understood everything we've talked

4   about?

5               THE DEFENDANT:  I don't know for sure.

6               THE COURT:  All right.  Let me go through and

7   ask you this.  We talked about the trial rights you'll

8   give up if you plead guilty.  Did you understand all of

9   those rights that you have?

10              THE DEFENDANT:  Yes.

11              THE COURT:  Do you understand how the judge

12  will decide your sentencing, that the judge would

13  consider the advisory guideline range, consider the plea

14  agreement, the presentence report?  Do you understand

15  that?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Also -- and I forgot to tell you

18  this -- at sentencing both sides have the right -- the

19  lawyers can present evidence or argument about sentencing

20  issues, and also you have the right to talk to the judge.

21  You can tell the judge anything you want to say before

22  the judge decides what your sentence will be.  Do you

23  understand that as well?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Do you understand the plea

 1 | agreement you reached with the government?

 2 |         THE DEFENDANT:  Yes.

 3 |         THE COURT:  Do you understand the potential

 4 | penalties you will face if you do plead guilty?

 5 |         THE DEFENDANT:  Yes.

 6 |         THE COURT:  And that includes the maximum

 7 | sentence the judge might impose if you plead guilty?

 8 |         THE DEFENDANT:  Yes.

 9 |         THE COURT:  Do you have any questions about any

10 | of these things, sir?

11 |         THE DEFENDANT:  No.

12 |         THE COURT:  And I do want to make sure, yeah,

13 | before we go any further you've understood everything.

14 | So any questions about anything we've talked about?

15 |         THE DEFENDANT:  No.

16 |         THE COURT:  Do you still want to plead guilty,

17 | sir?

18 |         THE DEFENDANT:  Yes.

19 |         THE COURT:  That's always a bad question.

20 | Nobody wants to plead guilty.  Nobody wants to be in the

21 | situation.  But is your decision to plead guilty your own

22 | choice?  Nobody's pressuring you or forcing you to do it.

23 | Is that true?

24 |         THE DEFENDANT:  Yes.

25 |         THE COURT:  Sir, then formally and for the

1    record, how do you plead to Count 1 of the United States

2    attorney's information that charges conspiracy to defraud

3    the United States?  Do you plead guilty or not guilty?

4            THE DEFENDANT:  Guilty.

5            THE COURT:  For Count 2, the tampering charge

6    or violation -- knowingly falsifying, tampering with, or

7    rendering inaccurate a monitoring device or method

8    required to be maintained under the Clean Water Act, do

9    you plead guilty or not guilty?

10            THE DEFENDANT:  Guilty.

11            THE COURT:  The record should reflect the

12   defendant has waived indictment and pleaded guilty to

13   Counts 1 and 2 of the information.

14        I find that he is competent, he fully understands

15   each of these charges against him, and I find there is a

16   factual basis for his pleas.

17        I find he knows the maximum penalties that could be

18   imposed for each of these offenses and he knows his jury

19   rights and has voluntarily waived those rights.

20        I further find that Mr. Schwarte's decision to plead

21   guilty was voluntary, knowing, and not the result of any

22   force, pressure, threats, or promises other than the

23   promises contained in the written plea agreement.

24        Therefore, I conclude he should be found guilty

25   based upon his pleas.

1      I will sign and file a written report and

2  recommendation recommending that the district judge

3  accept Mr. Schwarte's guilty pleas.

4      Each of the lawyers will receive a copy of that

5  written report.  You will have 14 days to file any

6  objections.  If no objection is made, then the district

7  judge can accept my recommendation and Mr. Schwarte's

8  guilty pleas simply by entering a written order doing so.

9      I hereby order a presentence investigation, and the

10  parties should pay attention to the deadlines related to

11  preparation of that report.  The court will set a

12  sentencing hearing for a later date.

13      Mr. Schwarte, I don't know yet when your sentencing

14  hearing will be scheduled.  Usually the judge schedules

15  that after the final presentence report's prepared.  And

16  as I've indicated, that's a thorough report, and it takes

17  some time to prepare.  So it's possible you may not have

18  a sentencing date scheduled for a couple months because,

19  again, the pretrial services report can take some time to

20  prepare.

21      Once the hearing is set, your lawyer will find that

22  out, and he will let you know.  That is the next time you

23  would be required to be back here in court.  So that's

24  the next thing that will happen in your case.

25      As I've indicated, I did review the pretrial

services report in this case as have each of the parties.
Probation's recommending that the defendant be released
on his own recognizance with only the mandatory
conditions and that there not be additional special
conditions of release.

    Mr. Vavricek, do you agree with that recommendation,
or do you have a different position?

            MR. VAVRICEK:  We agree with it, Your Honor.

            THE COURT:  Mr. Parry, I assume the defense
agrees with it as well.

            MR. PARRY:  Yes.  This would be a bad time to
argue something different.

            THE COURT:  Okay.  This is essentially the best
recommendation you could get regarding detention or
release.

    So, Mr. Schwarte, I'm going to order you be released
on your own recognizance.  That means you don't have to
post a money bond.  You are just going to appear on your
promise to appear -- or being released on your promise to
appear for future proceedings.

    There are mandatory conditions of release.  I put a
star and a circle on these -- first page of this release
order.  First, you cannot commit any federal, state, or
local crime.

    Next, you have to comply with the collection of a

1  DNA sample if authorized by statute.

2      Third, you need to let both your lawyer know and the

3  Court know -- you can let the Court know through the U.S.

4  Probation Office or contacting the clerk of court.  But

5  you have to let your lawyer and the Court know before you

6  change your phone number or your residence.

7      Also you have to appear in court as ordered.  Now,

8  again, the next time you're going to be required to be in

9  court at this point will be for the sentencing.  Your

10  lawyer will let you know once that's scheduled.

11      Also, if the judge does order that you serve any

12  term of imprisonment, you would have to surrender for

13  service of a sentence as directed by the court.

14      Do you understand those mandatory conditions you

15  have to file -- follow while on pretrial release?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Page 2 of this order goes over what

18  happens if you violate any condition of release.  First,

19  an arrest warrant could be issued for your arrest, and

20  you could be ordered to be detained until sentencing in

21  this case.

22      Also if you commit any federal -- or if you commit a

23  crime while on pretrial release, you could be sentenced

24  to a term of imprisonment and ordered to pay a fine.  A

25  prison sentence in that case would be in addition to any

1  sentence you might receive in this case.

2      Also you could be sentenced to a term of

3  imprisonment and ordered to pay a fine if you obstruct,

4  tamper with, or retaliate against any -- essentially if

5  you obstruct an investigation or tamper with or attempt

6  to tamper with, retaliate, or intimidate any victim,

7  witness, informant, or officer of the court.

8      Finally, if you fail to appear as required, then you

9  could be sentenced to prison and ordered to pay a fine.

10 And any prison sentence for failing to appear would,

11 again, be in addition to any sentence you might receive

12 in this case.

13     So I went over that very briefly.  Again, this order

14 details what happens if you don't follow the conditions,

15 and that's on page 2.  And again, page 1 has the

16 conditions of release.  There's a page (sic) for you to

17 sign on both page 1 and 2.

18     Mr. -- or, Miss Carrell, could you please give that

19 to Mr. Parry to review.

20     Mr. Schwarte, take the time you need to go over that

21 order with your lawyer.  I want to make sure you

22 understand it before we leave the courtroom here today.

23     Mr. Schwarte, do you have any questions about the

24 conditions of release?

25         THE DEFENDANT:  No.

1       THE COURT:  All right.  Again, I expect you'll

2  follow all of them.

3     Anything else we need to address in this matter,

4  Mr. Vavricek?

5       MR. VAVRICEK:  No thank you, Your Honor.

6       THE COURT:  Mr. Parry?

7       MR. PARRY:  Nothing further.

8       THE COURT:  That will conclude this hearing.

9       (The foregoing hearing was

10       concluded at 2:23 p.m.)

11

12

13

14

15

16

17

18

19

20                   CERTIFICATE

21     I certify that the foregoing is a correct

22  transcript to the best of my ability from the digital

23  recording of proceedings in the above-entitled matter.

24     S/Shelly Semmler            1-30-19
       Shelly Semmler, RMR, CRR         Date
25