IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 19-CR-01-LTS |
| vs. | ) | |
| PATRICK JAMES SCHWARTE, | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM**

*Background*

Potential Witnesses:

S/A Edward McGlasson, EPA-CID, or designee

Potential Exhibits:

None

Issues:

1. Whether an adjustment for aggravated role is appropriate, pursuant to USSG §3B1.1(a)?

2. Whether an adjustment for abuse of position of trust or use of special skill is appropriate, pursuant to USSG §3B1.3?

3. Whether defendant has the ability to pay a fine?

*Argument*

I.   A ROLE ADJUSTMENT IS APPROPRIATE

Section 3B1.1(a) provides, "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." In this case, defendant was an organizer and leader of a criminal activity that involved five or more participants and was otherwise extensive, so a four-level upward adjustment for aggravating role in the offense is appropriate under either prong within USSG §3B1.1(a).

Defendant was the second-in-command shift supervisor at the Sioux City Wastewater Treatment Plant ("WWTP"), which is a large regional sewage treatment plant that purports to treat waste from three states and at least 20 significant industrial users. PSR ¶¶ 9, 24. Defendant possessed extensive training and experience in municipal wastewater treatment, and thirty years' experience at the WWTP. PSR ¶ 24.

Defendant supervised others in the operation of the WWTP and directed them to engage in the criminal activity at issue—namely, the rigging of the WWTP's environmental tests from no later than 2012 through at least June 2015. *See* PSR ¶¶ 24-38. As the undisputed portions of the PSR make clear, "No later than July 2012, [defendant's supervisor] and the defendant, and at least five first-shift operators acting at the direction of the defendant and [defendant's supervisor], tampered with the monitoring methods at the WWTP in order to ensure the WWTP would pass all of its tests." PSR ¶ 25.

The USPO takes the narrow view that defendant and his supervisor were the only criminal participants in the tampering activity. But, as indicated, it is undisputed that at least five other persons—acting at the direction of defendant and his supervisor—tampered with the monitoring methods at the WWTP. PSR ¶ 24. These five other persons qualify as "participants" in the criminal activity for purposes of USSG §3B1.1, because those persons could be held criminally responsible for their acts; helping to rig the environmental test results at the WWTP, of course, formed the basis for a number of federal crimes. 33 U.S.C. § 1319(c)(4); 18 U.S.C. § 2; 18 U.S.C. § 371.

As the USPO itself recognizes, the mere fact that the grand jury has not charged the other five persons is irrelevant to the analysis for aggravating role. *See* USSG §3B1.1, comment (n.1). This is not a case in which one of the other five persons, for example, was an undercover law enforcement officer. *See id.* A supervisor-employee relationship in which the supervisor instructs the employee to commit acts that form the basis for a crime may, as in the present case, be sufficient to support a role enhancement under USSG §3B1.1. *See, e.g., United States v. Due*, 141 F.3d 1171, 1998 WL 105863, at *1 (8th Cir. 1998) (unpublished per curiam) (affirming role enhancement where part owner and vice president supervised line-level employees in illegal burying of waste); *United States v. Braun*, 60 F.3d 451, 453, 1995 WL 411174 (8th Cir. 1995) (affirming supervisor's role enhancement and rejecting arguments that none of his employees were charged by the grand jury, none of the employees benefitted from the illegal conduct, and none of the

employees took part in the supervisor's later diversion of funds or investments in the commodities market).

In any event, under the second prong of §3B1.1(a), which may independently provide grounds for the enhancement, "[i]n assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. *Id.*, comment (n.3). Specifically, a scheme that "used the unknowing services of many outsiders could be considered extensive." *Id.*, comment (n.3); *see*, *e.g.*, *United States v. West*, 942 F.2d 528, 531 (8th Cir. 1991) ("The 'otherwise extensive' language refers 'to the number of persons involved in the operation,' *United States v. Boula,* 932 F.2d 651, 654 (7th Cir.1991), and includes 'all persons involved during the course of the entire offense,' U.S.S.G. § 3B1.1, comment. (n. 2), including 'outsiders' who did not have knowledge of the facts. *Id.* In this case, West does not dispute either that he was a supervisor or that at least eight employees participated in the adulteration, though some may have participated without knowledge of the facts making their activities part of a crime. The district court did not err in considering these employees in determining that the criminal activities in this case were 'otherwise extensive.'"). That is certainly the case here, because a large regional waste treatment facility such as the WWTP could not possibly pollute the Missouri River for so many years, without detection no less, absent the unknowing services of many persons.

## II. ABUSE OF TRUST AND SPECIAL SKILL[1]

Pursuant to USSG §3B1.3, a two-level increase is appropriate, because defendant abused a position of public trust and used a special skill in a manner that significantly facilitated the commission and concealment of the offense. As indicated, defendant was a certified State of Iowa Grade II wastewater treatment plant supervisor and possessed extensive training and 30 years' experience in municipal wastewater treatment. PSR ¶ 24. Defendant was second in command at the WWTP, which was a large regional sewage treatment plant that purported to treat waste for the entire Siouxland region. PSR ¶¶ 10-13.

*United States v. Kuhn,* 345 F.3d 431, 437 (6th Cir. 2003) is apposite. In *Kuhn*, the Sixth Circuit affirmed the §3B1.3 enhancement for the superintendent of a WWTP. While defendant was not the superintendent, but instead the superintendent's right hand at the WWTP, a similar analysis should apply, because defendant likewise betrayed the public that he was supposed to serve and used his state-issued license, his extensive training, and his specialized experience to facilitate the commission of his crimes. The Sixth Circuit wrote:

> It is clear that the [§ 3B1.3] enhancement was properly applied. Kuhn was a government employee, charged with the safe and efficient operation of a wastewater treatment operation. He was convicted of knowingly causing sewage sludge to be discharged into a navigable waterway and falsifying reports. The statutes that were violated were in place to protect the general public from this sort of activity. It is

---

[1] The parties agree that, with respect to Count 2, pursuant to USSG §3B1.3, if the Court determines an adjustment would apply under USSG §3B1.3, but would be based solely on the use of a special skill and not an abuse of a position of public trust, any such adjustment may not be employed in addition to any adjustment under USSG §3B1.1.

5

> difficult to see how members of the general public were not in a beneficial relationship with Kuhn, as significant numbers of the public depended upon Kuhn to prevent or ameliorate water pollution in the area. Moreover, his high-level position with respect to his public function of wastewater treatment, contributed in some significant way to facilitating the commission of his offense."

*Id.* at 437 (citation and internal quotation marks omitted).

## III. FINE

"The defendant bears the burden of proving both his inability to pay at the time of sentencing and that he is not likely to become able to pay a fine upon his release from his term of imprisonment." *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017) (cleaned up). "The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." *United States v. Kay*, 717 F.3d 659, 665 (8th Cir. 2013) (quoting USSG §5E1.2(a)). "A sentencing court must make specific factual findings on the record demonstrating that it has considered the defendant's ability to pay the fine." *Id.* (quoting *United States v. Patient Transfer Serv., Inc.,* 465 F.3d 826, 827 (8th Cir. 2006)). "It is an incorrect application of the [G]uidelines to impose a fine that a defendant has little chance of paying." *Id.* (quoting *United States v. Granados,* 962 F.2d 767, 774 (8th Cir. 1992)). In this case, the Guidelines suggest a fine range of at least $3,000 to $30,000 for defendant. PSR ¶ 100.[2]

The probation office incorrectly concludes that defendant has demonstrated he has an inability to pay a fine. For example, the probation office wrongly focuses

---

[2] If the Court sustains the government's objections in Parts I and II above, the guideline fine range would increase to $10,000 to $100,000.

6

on a wholly irrelevant factor, the fact that defendant has already paid his privately retained counsel certain funds. *See* PSR ¶ 90, Resp. to Obj. No. 6. Funds that defendant has already expended are sunk costs, of course, and do not effect defendant's present ability to pay a fine.

Defendant has a significant positive net worth and a positive net monthly cash flow. PSR ¶ 88. The Eighth Circuit has affirmed the imposition of fines for defendants with lesser financial circumstances. *See, e.g.*, *United States v. Tufte*, 640 F. App'x 578, 579-80 (8th Cir. 2016) (per curiam) (affirming imposition of a $1,000 fine in a perjury case, where defendant had a positive total net worth of $12,344.94 and a net positive cash flow of $89.53, even though defendant had recently given birth to a second child); *United States v. Vidrickson*, 998 F.2d 601, 603 (8th Cir. 1993) (per curiam) (affirming district court's decision to impose fine, where defendant had a net worth of $18,254 and a net monthly cash flow of $195). Notably, as in *Vidrickson*, defendant possesses assets of which defendant may readily divest himself in order to pay a fine within the range, including stock holdings that defendant earned while helping the City of Sioux City pollute the Missouri River. PSR ¶ 88. Accordingly, the Court should find defendant has not met his burden to show he is unable to pay a fine, and fine him accordingly. *See, e.g.*, *United States v. Hartley*, 476 F. App'x 345, 347 (8th Cir. 2012) (unpublished per curiam) (affirming imposition of $3000 fine, even though defendant was 90% disabled, was ordered to make nearly $80,000 in restitution, and his liabilities exceeded his assets, where the defendant had approximately $8,000 in home equity

7

and owned or jointly owned a 1956 Chevrolet pickup, a 2009 Dodge pickup, and a travel trailer, which could be readily sold).

Respectfully submitted,

PETER E. DEEGAN, JR.
United States Attorney

By, /s/ *Timothy L. Vavricek*

TIMOTHY L. VAVRICEK
Assistant United States Attorney
111 Seventh Avenue, SE, Box 1
Cedar Rapids, IA 52401
319-363-6333
319-363-1990 (Fax)
tim.vavricek@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2020, I electronically filed the foregoing and its attachments with the Clerk of Court using the ECF system which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY: /s/TV

Copy to:
Mr. Patrick Parry
USPO